# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT EARL SAMUELS, CDCR #F-61946, | Case No.:  3:20-cv-01051-CAB-MDD |
| Plaintiff, | **ORDER:** |
| vs. | **1) SCREENING COMPLAINT PURSUANT TO 28 U.S.C. SECTION 1915A;** |
| M. LIZARRAGA, Correctional Officer, | |
| Defendant. | **AND** |
| | **2) DIRECTING CLERK OF COURT TO ISSUE A SUMMONS PURSUANT TO Fed. R. Civ. P. 4(b)** |

Robert Earl Samuels ("Plaintiff"), an inmate at Richard J. Donovan State Prison ("RJD") in San Diego, California, filed this civil rights action pursuant to 42 U.S.C. Section 1983.  (*See* Compl., ECF No. 1.)  Plaintiff alleges that members of a prison gang assaulted him based on rumors started by a correctional officer, Defendant M. Lizarraga. (*See id.* at 8-9.)  Plaintiff contends that Defendant's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment.  (*See id.* at 3.)

Plaintiff prepaid the $400 filing fee required by 28 U.S.C. Section 1914(a).  (*See* ECF No. 1-2, at 1, Receipt No. 121932.)  Therefore, and unlike most pro se litigants, Plaintiff has not filed a motion to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. Section 1915(a).  Plaintiff has not yet requested the Clerk issue a summons pursuant to Federal Rule of Civil Procedure 4(b) and has not yet served his Complaint on Defendant.  *See* Fed. R. Civ. P. 4(b) ("On or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal."); *Boudette v. Barnette*, 923 F.2d 754, 757 (9th Cir. 1991) (absent a request and court order that the U.S. Marshals' Service effect service on someone's behalf pursuant to Federal Rule of Civil Procedure 4(c)(3), individuals who prepay civil filing fees "remain[] responsible for timely service").

# I.      Screening pursuant to 28 U.S.C. Section 1915A

## A. Standard of Review

The Court must conduct an initial review of the Complaint pursuant to 28 U.S.C. Section 1915A because Plaintiff is a prisoner and seeks "redress from a governmental entity or officer or employee of a governmental entity."  *See* 28 U.S.C. § 1915A(a).

Section 1915A "mandates early review—'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'"  *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016).  The mandatory screening provisions of Section 1915A apply to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee.  *See, e.g.*, *Resnick v. Hayes*, 213 F.3d 443, 446-47 (9th Cir. 2000).  "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *Olivas v. Nevada ex rel. Dep't of Corrs.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

## B. Factual Allegations

Plaintiff alleges that on June 30, 2018, Defendant told him that an unnamed inmate

was being assigned to be housed in Plaintiff's cell.  (*See* Compl. at 8.)  A third inmate, Robinson, was present for the conversation, and "[a]fter the defendant finished speaking [Robinson] informed plaintiff in defendant's presence that the unnamed inmate was a CRIP that multiple other crips had refused to be housed with." (*Id.* (emphasis in original).)  "CRIPs are a street gang and prison gang with a history of violence and rape in prison." (*Id.* at 9 (emphasis in original).)  Robinson explained "that the reason no one would be housed with the other inmate was he was 'not compatible with anyone and would be a problem.'" (*See id.* at 8.)  A declaration from Robinson is attached to Plaintiff's Complaint and further explains that Plaintiff "asked [Defendant] was the person gang affiliated?  [Defendant] told [Plaintiff] yes.  [Plaintiff] asked could he be moved with a nonaffiliated inmate in another building.  [Defendant] refused and told [Plaintiff] he was getting the cell mate [Defendant] had chosen for him." (*See id.* at 11; *see also id.* at 8 ("Plaintiff then expressed his safety concerns with defendant Lizarraga about being housed with an inmate with such a reputation amongst his peers and asked to be housed with a different inmate.  The defendant refused.").)

After their conversation ended, Defendant "call[ed] another CRIP inmate," Isaac Scott, "who had nothing to do with the situation . . . and [Defendant] informed him of what happened with the plaintiff." (*Id.* at 8.)  Defendant said that Scott should "'holler at'" Plaintiff, and explained that "knew plaintiff was a crip while other inmates were close enough to hear what had been said." (*See id.*)  According to a declaration from Scott, attached to the Complaint, "[t]he word 'holler' has many meanings and is used loosely in prison.  It can mean anything from formally speaking to a person or battering him.  [Defendant] didn't specify what he meant or his intentions." (*See id.* at 16.)  In response, "Scott informed [Defendant] that he was not aware plaintiff was a crip," and later told Plaintiff about the conversation.  (*See id.* at 8.)

"For months following this day [P]laintiff was harassed by inmates about being a gang member based on a continuous rumor that [D]efendant started and kept alive." (*See id.*)  In November 2018, Plaintiff was assaulted by "multiple CRIP inmates . . . ," and

suffered "a broken hand, multiple cuts,[]multiple bruises, two black eyes and a bloody nose." (*See id.* at 8-9.)  Plaintiff attached to his Complaint a declaration from one of the inmates involved in the assault, Tevan Love, who stated that on November 27, 2018 he "walked up on a group talking about an inmate who was a drop out" gang member. (*See id.* at 18.)  Love had "heard this rumor a few times from different people . . . but never knew who the inmate was." (*See id.*)  "[A]llegedly some one [sic] had been sharing this information directly from a[] [correctional] officer in 5 block." (*See id.*)  "[W]hen Samuels #F61946 walked by he was identified right then as the drop out, and [Love] jumped him." (*See id.*)  After the assault, "[P]laintiff was placed in the hole,[]while the inmates who assaulted him were left in general population." (*Id.* at 8.)

Plaintiff contends that Defendant's actions violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (*See id.* at 3.)  Plaintiff seeks $100,000 in damages, and $100,000 in punitive damages. (*See id.* at 7.)

C. Analysis

The Court finds that Plaintiff's Eighth Amendment claim is "sufficient to meet the low threshold for proceeding past the screening stage," and is not subject to sua sponte dismissal pursuant to 28 U.S.C. Section 1915A(b)(1) or (2).  "The Eighth Amendment requires prison officials to take reasonable measure to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrs. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)).  To allege an Eighth Amendment violation, a prisoner must show that a prison official acted with deliberate indifference.  *See id.* (citing *Farmer*, 511 U.S. at 837).  "'Deliberate indifference' has both subjective and objective components.  A prison official must 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and  . . . must also draw the inference.'" *See id.* (quoting *Farmer*, 511 U.S. at 837) (internal citations omitted)).

Other courts have found that "prison officials may create a serious risk of

irreparable harm, and thus violate the Eighth Amendment, by giving other inmates reason to believe," for example "that a particular inmate is a jailhouse 'snitch.'"  *See Glenn v. Cole*, No. CIV S-06-0151 FCD KJM P, 2010 WL 2303028, at *2 (E.D. Cal. June 7, 2010) (citation omitted); *see also Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989) (allegations that prison officials "labeled [plaintiff] a 'snitch' with the intent of having [him] killed by inmates" may state an Eighth Amendment claim).  Although the Court is not aware of any cases involving allegations that a correctional officer started rumors that the plaintiff was a dropout gang member, the risks inherent in starting such a rumor and repeating it to known gang members are similar to those posed by labeling an inmate as an informant.  *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference standard "does not require that the guard or official 'believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before that officer is obligated to take steps to prevent such an assault.'" (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983))).  This is particularly true given the allegations that Plaintiff was, in fact, assaulted as a result of these rumors. (*See* Compl. at 8, 18.)

As a result, the Court concludes that Plaintiff has stated an Eighth Amendment claim against Defendant sufficient to survive screening pursuant to 28 U.S.C. Section 1915A.  Nevertheless, the Court cautions Plaintiff that the sua sponte screening process is "cumulative of, not a substitute for, any subsequent [motion to dismiss] that the defendant may choose to bring."  *See Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007).

## II.    Conclusion and Order

For the reasons explained, the Court finds that Plaintiff's Complaint states an Eighth Amendment claim sufficient to survive sua sponte screening pursuant to 28 U.S.C. Section 1915A.

The Court **DIRECTS** the Clerk of the Court to issue a summons upon Defendant pursuant to Federal Rule of Civil Procedure 4(b) so that he may serve the Complaint

upon him as required by Federal Rule of Civil Procedure 4(c).  Plaintiff must effect personal service upon Defendant within **90 days** of this Order and file proof of that service pursuant to Federal Rule of Civil Procedure 4(l) or file a waiver of service pursuant to Federal Rule of Civil Procedure 4(d).  If Plaintiff fails to file proof of service or a waiver of service within that time, the Court may dismiss Plaintiff's Complaint for failure to prosecute pursuant to Federal Rule of Civil Procedure 4(m).[1]

**IT IS SO ORDERED**.

Dated:  August 6, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[1] Because Plaintiff is not proceeding in forma pauperis, he is "responsible for having the summons and complaint served" now that his Complaint has survived the sua sponte screening required by 28 U.S.C. Section 1915A.  *See* Fed. R. Civ. P. 4(c)(1).  The Court notes that the 90 day period for service specified by Federal Rule of Civil Procedure 4(m) was tolled during that screening process, and thus runs from the date of this Order.  *Cf. Butler v. Nat'l Cmty. Renaissance of Cal.*, 766 F.3d 1191, 1204 n.8 (9th Cir. 2014) (noting that "[o]ther federal circuit courts of appeals have held that the [90]-day service period is tolled until the court screens a plaintiff's in forma pauperis complaint and authorizes services of process." (citations omitted)).